Case 2:16-cv-00050 Document 16 Filed in TXSD on 07/22/16 Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
July 22, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ABEL SANCHEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-50 |
| | § | |
| GENERAL ELECTRIC COMPANY, *et al*, | § | |
| | § | |
| Defendants. | § | |

### ORDER ON MOTION TO COMPEL ARBITRATION

Plaintiffs filed this Fair Labor Standards Act (FLSA) lawsuit as a collective action for unpaid overtime wages against Defendants General Electric Company, GE Oil & Gas, Inc., GE Oil & Gas Logging Services, Inc., and GE Oil & Gas Pressure Control, LP (jointly GE) on February 15, 2016. D.E. 1. Plaintiffs also assert a class action for declaratory judgment on behalf of all workers who had signed certain agreements releasing GE from FLSA claims, seeking to render those agreements unenforceable. *Id*.

On May 9, 2016, GE filed its Motion to Compel Arbitration and Dismiss (D.E. 6), requesting enforcement of the company's plan, termed "Solutions: An Alternative Dispute Resolution Procedure" (Solutions ADRP, D.E. 6-2), including preventing Plaintiffs from proceeding collectively or as a class, and requiring dismissal in favor of binding arbitration. Plaintiffs filed their response (D.E. 8), arguing that the release agreements on which GE relies to defeat certain FLSA claims have merger clauses that render the Solutions ADRP unenforceable, that the question of arbitrability must be determined by this Court, that GE is estopped from enforcing any requirement of

arbitration, and that the anti-class and anti-collective action features of Solutions ADRP violate the National Labor Relations Act (NLRA) and Federal Arbitration Act (FAA).

On June 9, 2016, the Court heard arguments on the motion in conjunction with its Initial Pretrial Conference. Both sides of this dispute have also filed additional briefing (D.E. 12, 15). For the reasons set out below, the Court GRANTS the motion to compel.

## DISCUSSION

**A. This Court Has the Power to Determine Arbitrability.**

Although the FAA is a federal statute, it has been deemed procedural, such that it—by itself—does not provide federal question jurisdiction. Instead, in an action to compel arbitration, the Court looks through to the parties' underlying substantive controversy. *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009). The underlying claims seek remedies under the FLSA, which does supply federal question jurisdiction under 28 U.S.C. § 1331—jurisdiction that neither party disputes. 29 U.S.C. § 201 et seq.

As a contractual matter, the parties have the power to delegate to an arbitrator the threshold or gateway questions of arbitrability: whether the parties have agreed to arbitrate and/or whether their agreement covers a particular controversy. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010). However, nothing in the Solutions ADRP delegates to the arbitrator the task of determining those gateway issues and no party to this dispute argues that it did. Rather, the arbitrator is entrusted only with the merits of the claim. D.E. 6-2, p. 16, ¶ II(D)(1). Thus, the gateway decisions fall to this Court. *Id.*; *Oil, Chemical & Atomic Workers' International Union v. Chevron Chemical Co.*, 815

F.2d 338, 340-41 (5th Cir. 1987) (describing the role of the judiciary as opposed to the arbitrator in determining whether a dispute is subject to arbitration).

It is well-settled that the determination whether to compel arbitration under the FAA involves two questions: (1) whether there is a valid agreement to arbitrate—a question of law governed by state contract law; and (2) whether the particular dispute falls within the scope of the arbitration agreement—a question of law governed by federal substantive law and policy. 9 U.S.C. §§ 2, 4. *See also, Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014); *Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority*, 764 F.3d 210, 215 (2nd Cir. 2014); *In re Weekley Homes*, 180 S.W.3d 127 (Tex. 2005). The parties' issues raise both questions.

### B. There Is An Agreement to Arbitrate.

GE seeks to compel arbitration under the Solutions ADRP (D.E. 6-2), which it claims applies to its employees, including Plaintiffs. Plaintiffs do not deny that they were governed by Solutions ADRP during certain portions of their employment. However, they challenge the continuing viability of the Solutions ADRP on two grounds. First, Abel Sanchez, on behalf of himself and others who signed what the parties term a "Reclassification Release" (D.E. 8-2), argues that the Reclassification Release supersedes the Solutions ADRP by virtue of its merger clause, making the Solutions ADRP unenforceable.[1]  Second, Plaintiffs argue that the class-killing provision of the Solutions ADRP violates the NLRA, rendering the arbitration agreement unenforceable.

---

[1] For purposes of adjudicating this issue, the Court sets aside for now Plaintiffs' argument that the Reclassification Release is unenforceable—a matter inconsistent with their argument that the Reclassification Release is all-encompassing of the parties' relationship.

3 / 12

As indicated above, the first question is governed by state contract law. Both agreements include a choice of law clause by which they are governed by the law of the State of New York. D.E. 6-2, p. 10, § II(W); D.E. 8-2, p.3, § 10. While this claim has been brought in Texas, Texas law enforces choice of law clauses so long as the state chosen has some relationship to the dispute. *E.g., In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002) (enforcing a choice of law clause in an arbitration agreement designating the law of Colorado). The same is essentially true of New York law. *Ministers & Missionaries Benefit Board v. Snow*, 45 N.E.3d 917, 923 (2015) (dispensing with conflict of laws analysis and accepting choice of law designations).[2]

Two of the Defendants, General Electric Company and GE Oil & Gas, Inc., are corporations organized under the laws of New York and have their principal place of business there. The other two Defendants are wholly owned subsidiaries of General Electric Company. Thus the State of New York has some relationship to the dispute. This Court enforces the choice of law designation of the State of New York to the extent that state law governs any question of contract construction.

The question for decision under New York law is whether the merger clause in the Reclassification Release eliminated the Solutions ADRP as between employee signatories and GE. Plaintiffs rely on the following language of the Reclassification Release:

- "This Agreement supersedes all prior agreements and understandings concerning the subject matter of this Agreement." D.E. 8-2, ¶ 9.

---

[2] *Cf., Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 64 (1995) (choice of law designating the law of the State of New York is enforced except to the extent that it conflicts with the FAA)

- "The Company and the Employee intend the terms and conditions of this Agreement to govern all issues related to the Employee's employment, including but not limited to Employee's salary and pay." D.E. 8-2, Preamble.

Plaintiffs claim that this eliminated all other agreements pertaining to any aspects of their employment, including the Solutions ADRP.

In opposition, GE relies on two clauses that counsel against this construction:

- The Senior Vice President of Human Resources for the General Electric Company (or his or her designee) may modify or discontinue the Solutions procedure in the future so long as the Company gives affected employees sixty (60) calendar days advance notice. Any such change shall be prospective, and shall not affect previously filed claims. D.E. 6-2, ¶ II(C).

- This procedure constitutes the sole agreement between the Company and its employees concerning the requirements of Solutions and may not be modified by written or oral statements of any Company representative except as set forth in Section II.C above. If there are conflicts between the requirements of this procedure and other Company policies, procedures, publications or statements by Company representatives regarding matters addressed by this procedure, the requirements of this procedure control. *Id.* at II(E).

There is no evidence or argument that the Reclassification Release is signed by the Senior Vice President of Human Resources for the General Electric Company or his or her designee. Neither is there evidence that any advance notice was given to any employees.

General principles of contract construction in New York law do not support Plaintiffs' argument. Contracts established at different times "are separate unless the history and subject matter shows them to be unified." *Ripley v. Int'l Railways of Cent. Am.*, 171 N.E.2d 443, 446 (N.Y. 1960). The Court makes the determination whether contracts are unified in view of the manifest intent of the parties and all of the

surrounding circumstances, including independent purposes and whether there is an identity of parties. *See generally, Rudman v. Cowles Communications, Inc*., 280 N.E.2d 867, 873 (N.Y. 1972).

Here, the Solutions ADRP was created before, and independently of, the Reclassification Release. Standing alone, it applies to all of GE's employees, not just Sanchez or other reclassification employees. It governs the procedural mechanism for resolving virtually all disputes—far more than FLSA wage disputes. And it has built-in terms to avoid inadvertent elimination such as Plaintiffs seek. In contrast, the Reclassification Release is specific to Sanchez (one employee at a time), was designed to govern a specific pay dispute, and makes no reference to Solutions ADRP or any other dispute resolution procedure. Thus New York's general rules of contract construction support treating the agreements separately.

More specifically, a merger clause is insufficient to preempt a prior arbitration agreement. The Second Circuit, applying New York law, held that a merger clause addresses only the use of parol evidence to alter the terms of an agreement and does not affect the enforcement of a separate arbitration agreement. *Bank Julius Baer & Co. v. Waxfield Ltd*., 424 F.3d 278, 283 (2d Cir. 2005)[3] (citing *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997) (in turn citing *Fogelson v. Rackfay Const. Co*., 90 N.E.2d 881, 884 (N.Y. 1950)) and *Primex Int'l Corp. v. Wal-Mart Stores*, 679 N.E.2d 624, 627 (N.Y. 1997)).

---

[3] As recognized by *Goldman, Sachs*, 764 F.3d at 215 n.3, the *Bank Julius Baer* decision was abrogated by *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287 (2010), with respect to any presumption in favor of arbitration applying in the initial decision whether an arbitration agreement exists.

Plaintiff's cases do not compel a different result. In *General Electric Co. v. Compagnie Euralair, S.A.*, 945 F. Supp. 527, 535 (S.D.N.Y. 1996), *aff'd*, 164 F.3d 617 (2d Cir. 1998), the court merely noted that parol evidence is not available to alter an integrated agreement. It does not address the treatment of a wholly separate written agreement, executed at a different time and for a different purpose. The same is true of *Vermont Teddy Bear Co. v. Tyco Indus., Inc.*, 80 F. Supp. 2d 36, 38 (N.D.N.Y. 2000) (discussing treatment of letter of intent and affidavit that were offered to explain an integrated agreement and might alter that agreement) and *Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing Corp.*, 53 F. Supp. 2d 199, 213 (N.D.N.Y. 1999) (extrinsic representations offered to vary the terms of an agreement).

The Second Circuit's approach to merger clauses in *Bank Julius Baer* is similar to the analysis of forum selection clauses that appear to contradict arbitration provisions. Before a forum selection provision will be held to destroy an arbitration provision, it must specifically reference that arbitration provision as subject to elimination. "[W]e 'cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration.'" *Bank Julius Baer, supra* at 284 (quoting *Personal Security & Safety Systems, Inc. v. Motorola*, 297 F.3d 388, 396 n.11 (5th Cir. 2002)). The forum selection clause must be all-inclusive and mandatory because any intentional waiver of a right by either party requires knowledge that the right is being waived. *Goldman, Sachs*, 764 F.3d at 216, 284. The Court rejects Plaintiffs' first challenge that the Reclassification Release merger clause defeats the arbitration agreement.

With respect to the second challenge, the Court notes that, even assuming for purposes of argument that the Solutions ADRP did violate § 7 of the NLRA, this Court is not the appropriate forum for making that determination.  Instead, to assert such a claim, Plaintiffs are required to file a charge with the National Labor Relations Board within six months of the event about which they complain and any appeal is directed to the court of appeals (not any district court).  29 U.S.C. § 160(a), (b), (f).  This Court is not empowered to entertain the NLRA complaint and Plaintiffs have not shown that they have preserved this issue in any other forum.  The Court rejects Plaintiffs' second challenge.

The Court concludes that the merger clause in the Reclassification Release does not render the Solutions ADRP obsolete.  And Plaintiffs have not raised a cognizable complaint under the NLRA.  Consequently, the Court holds that there is an existing and enforceable arbitration agreement between the parties.

### C. The Dispute is Within the Scope of the Arbitration Agreement; Whether the Releases are Enforceable is an Arbitrable Dispute.

Plaintiffs argue that their challenge to the Reclassification and Layoff Releases is outside the scope of the arbitration agreement because, in seeking a declaratory judgment that the releases are contrary to federal law or public policy, they are seeking a provisional remedy to reinstate the status quo, as permitted by paragraph II(M) of the Solutions ADRP.  Federal courts maintain the power to grant provisional remedies such as temporary restraining orders and temporary injunctions to maintain the status quo. *Rogers, Burgun, Shahine & Deschler, Inc. v. Dongsan Const. Co.*, 598 F. Supp. 754, 758

(S.D.N.Y. 1984) (preliminary injunction issued to prevent loss of collateral within the jurisdiction to secure contractual obligation); *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 120 (2d Cir. 2009) (court properly considered preliminary injunction to protect trade secrets from dissemination and properly denied that relief due to failure to demonstrate irreparable harm).

But even as demonstrated by Plaintiff's citation of *Hanna v. Zumpano*, 701 N.Y.S.2d 553 (1999), declaratory relief that goes to the merits is premature and infringes on the arbitration process. Preliminary relief is only available to maintain or reinstate the status quo. "The status quo has been frequently defined as the last uncontested status which preceded the pending controversy." *Rogers, Burgun, Shahine & Deschler, Inc. v. Dongsan Const. Co.*, 598 F. Supp. 754, 758 (S.D.N.Y. 1984) (quoting *Flood v. Kuhn*, 309 F.Supp. 793, 798 (S.D.N.Y.1970), *aff'd*, 443 F.2d 264 (2d Cir.1971), *aff'd*, 407 U.S. 258 (1972)).

The releases that Plaintiffs seek to invalidate by provisional declaratory relief are agreements signed approximately two years prior to the filing of this action. Those agreements purportedly resolved a dispute to the satisfaction of both parties—making the dispute between them no longer contested. Granting declaratory relief to eliminate those releases would be to issue relief on the merits, prior to arbitration, disturbing the status quo and insulating that issue from arbitral relief. Declaratory relief is not a provisional remedy in this context and is an inappropriate interjection of federal judicial power in a matter entrusted to the arbitrator.

Also with respect to the scope of the arbitration agreement, there appears to be some concern that GE is not treating the claims of those who signed releases—either the Reclassification Release or the Layoff Release—as subject to arbitration. There is some evidence that GE previously refused to arbitrate the claims of a releasing employee, arguing that he had no remaining claims to be resolved. However, the Plaintiffs who have signed releases now challenge the enforceability of those releases as contrary to law or public policy.

Whether Plaintiffs are correct about the enforceability of any releases they signed is a question on the merits that is ostensibly within the scope of arbitration pursuant to the Solutions ADRP and is not within the scope of this Court's jurisdiction.

> Covered Claims include all claims that arise out of or are related to an employee's employment or cessation of employment (whether asserted by or against the Company), where a court in the jurisdiction in question would otherwise have the authority to hear and resolve the claim under any federal, state or local (e.g., municipal or county) statute, regulation or common law.

D.E. 6-2, ¶ II(K). The judiciary determines only whether the parties agreed to submit a dispute to arbitration; the judiciary does not consider the merits of the claims subject to arbitration. *Oil, Chemical*, 815 F.2d at 340 (citing *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568 (1960)).

Thus GE's request to compel arbitration includes arbitrating the issue whether the releases are enforceable. However, "Both of the parties may abandon this [arbitration] method of settling their differences, and under a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration." *In re American*

*Express Financial Advisors Securities Litigation*, 672 F.3d 113, 132 (2d Cir. 2011) (quoting *Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 602 F.3d 486, 490 (2d Cir. 2010) (per curiam)); *Eman-Henshaw v. Park Plaza Hosp.,* 129 F.3d 610 (5th Cir. 1997) (initial refusal to engage in arbitration can waive the right to compel it).

In the event that GE, as the party moving to compel arbitration, refuses to engage in that arbitration, then it will have opened up the question whether it waived its rights under the Solutions ADRP.  If arbitration is waived, the claim regarding the enforceability of the releases may revert to this Court.  Because of that contingency, the Court will stay these proceedings pending arbitration rather than dismiss them.  However, in the absence of that occurrence, the dispute is within the scope of the existing arbitration agreement.

### D. Equitable Estoppel Does Not Prevent Arbitration

Plaintiffs argue that GE has already refused to arbitrate the Christopher Ramirez claim and has waived—or should be estopped from compelling—arbitration.  Christopher Ramirez is not a party to this action.  There is no evidence that GE has refused to arbitrate the claims of these Plaintiffs.  Unless and until GE does refuse to arbitrate claims brought in this action, the issue is not ripe for decision and this Court will not issue an advisory opinion. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (federal courts do not issue advisory opinions, even in the context of requests for declaratory relief).

Plaintiffs also argue that GE should be equitably estopped from invoking Solutions ADRP because it failed to use the Solutions ADRP procedure when seeking and obtaining the FLSA releases from Plaintiffs.  Nothing about the Solutions ADRP

requires the adjustment of legal claims to be accomplished through its provisions. It does not prevent amicable resolutions outside of its parameters. D.E. 6-2, ¶ II(A) ("Employees are encouraged to resolve issues informally . . . ."). Rather, it prevents resort to litigation of covered claims in court. Nothing in the record indicates that the releasing Plaintiffs were subjected to litigation in connection with their previous FLSA releases.

Plaintiffs have not demonstrated that any action GE took in connection with obtaining the FLSA releases outside of the parameters of the Solutions ADRP was unconscionable. Plaintiffs' reliance on *Bell v. Koch Foods of Mississippi, LLC*, 358 F. App'x 498, 502 (5th Cir. 2009) (considering fraud and unconscionability under Mississippi law) is inapposite. Plaintiffs have provided no reasonable grounds on which to impose an equitable remedy, such as estoppel, against GE.

## CONCLUSION

For the reasons set out above, the Court GRANTS the motion to compel arbitration (D.E. 6) and ORDERS the parties to submit their claims to arbitration pursuant to the terms of the Solutions ADRP. This action is STAYED pending arbitration and the parties are ORDERED to file with this Court on November 1, 2016, and every six months thereafter a status report advising the Court whether arbitration has been completed. The Court DENIES GE's request for attorney's fees.

ORDERED this 22nd day of July, 2016.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE